# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |  |
|---|---|---|
| JOYCE ANN BROWER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-193-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Joyce Ann Brower on May 15, 2012, and Plaintiff's Brief in Support of Reversing or Remanding the Decision of the Commissioner [DE 18], filed by Plaintiff on October 30, 2012. Plaintiff requests that the November 24, 2010 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed or remanded for further proceedings. On December 6, 2012, the Commissioner filed a response, and Plaintiff filed a reply on December 24, 2012. For the following reasons, the Court grants the relief sought by Plaintiff and remands this matter for further proceedings.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

2

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## BACKGROUND

The ALJ found that Joyce A. Brower had not engaged in substantial gainful activity since her alleged onset date through her date last insured; Brower had severe physical impairments of narcolepsy and depression; these severe impairments did not meet or medically equal a listed impairment; and Brower maintained the residual functional capacity (RFC) to perform medium work, with restrictions.

The ALJ concluded that Brower was limited to simple, repetitive tasks; could never work around hazards, including moving machinery and unprotected heights; and could not operate a motor vehicle. Although the ALJ concluded that Brower was unable to perform her past relevant work as

4

an administrative assistant, the ALJ also found – based in part on the testimony of a vocational expert – that there were jobs in significant numbers in the national economy that Brower could perform with her limitations.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). On September 12, 2013, this case was reassigned to the undersigned Magistrate Judge.

## ANALYSIS

Brower makes three arguments for remand: 1) the ALJ's credibility finding was flawed; 2) the ALJ incorrectly rejected the opinion of her treating physician; and 3) the ALJ's Residual Functional Capacity determination was incorrect. The Court considers each in turn.

### A. Credibility Determination

Brower challenges the ALJ's determination that her testimony was only partially credible. She criticizes the ALJ's decision for relying on standard boilerplate language and, more specifically, contends that the ALJ's substantive reasoning was lacking in evidentiary support. In particular, Brower argues that the ALJ erred in relying on gaps in her treatment record as grounds for an adverse credibility finding. She also contends that the ALJ committed error in his analysis of Brower's symptoms and the effects of changes in her medication. In sum, Brower insists that her account of her treatment is well-supported by the record in contrast to the ALJ's conclusory analysis. In response, the Commissioner points out that a court should reverse an ALJ's credibility determination only if it is "patently wrong" and argues that the ALJ considered and discussed the

nature and alleged severity of Brower's symptoms, her medications and their side effects, the reports that Brower's symptoms improved with medication, significant gaps in the her treatment history, and her activities of daily living. According to the Commissioner, this amounts to substantial evidence in support of the ALJ's credibility finding.

In making a disability determination, Social Security Regulations provide that the Commissioner must consider a claimant's statements about her symptoms, such as pain, and how the claimant's symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. In determining whether statements of pain contribute to a finding of disability, the Regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including

objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* §§ 404.1529(c)(1); 416.929(c)(1).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738.

Here, the ALJ began his discussion of Brower's credibility with the following statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 25).

The Seventh Circuit Court of Appeals has been highly critical of this boilerplate language, at one point calling it "meaningless." *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d

7

346, 348 (7th Cir. 2010). This boilerplate language is unhelpful because it "gets things backward because a claimant's credibility is assessed as an input to the ALJ's determination of an appropriate RFC. One does not first decide the RFC and then reject as not credible anything inconsistent with it." *Robinson v. Astrue*, No. 1:11-cv-1591, 2013 WL 1002883, at *4 (S.D. Ind. Mar. 13, 2013) (citing *Bjornson*, 671 F.3d at 645-46). But if an ALJ includes this boilerplate language but explains his conclusion adequately, the inclusion of that language is harmless and remand is unwarranted. *Filus v. Astrue*, 694 F.3d. 863, 868 (7th Cir. 2012).

Here, prior to determining Brower's credibility, the ALJ reviewed Brower's testimony at the administrative hearing, her activities of daily living, and her treatment records, including the following facts in the decision. Brower testified that she had constant problems trying to stay awake due to her narcolepsy. She further reported having an inconsistent sleep schedule; on some days, she slept one to two hours but on other days she slept "all day." Brower also described the numerous side effects caused by her medication, including loss of balance, bowel problems, lightheadedness, dizziness, severe cramping, back pain, intestinal spasms, and jaw grinding. With respect to her activities of daily living, Brower stated that she was able to do light housework, but that her husband and sons did most of the chores. She testified that she was unable to sit, read, or write for long periods of time as a result of her narcolepsy. In her disability application, Brower reported that she was unable to focus and that she suffered from depression that caused her to forget important tasks.

Reviewing the treatment records, the ALJ noted that Brower was diagnosed with monosymptomatic narcolepsy in 2007. Dr. Gravelyn and Dr. Vijayakumar treated her for narcolepsy. Dr. Gravelyn advised Brower not to drive because of her narcolepsy. Brower also received treatment for depression at Advanced Counseling Services. In June 2008, Brower informed

Dr. Vijayakumar that she was feeling better on her prescriptions of Cymbalta, Wellbutrin, and Vyanese. But in August 2008, she was diagnosed with major depression that seriously impaired her social functioning. Throughout her treatment for depression, Brower reported difficulties with fatigue, crying spells, and low self-esteem. Although Dr. Vijayakumar recommended that she remain on her medication, in September 2008, Brower stopped taking those medications and stopped seeing her psychiatrist due to the financial cost.

The ALJ noted that, in March and April 2009, Brower received treatment for depression at the University of Michigan Health System's psychiatric clinic. She reported an improvement in her mood and ability to concentrate after being prescribed Wellbutrin and beginning to volunteer at her son's school. Dr. Sai Li diagnosed Brower with major depressive disorder that was moderate and recurrent and moderately restricted Brower's social functioning. In April 2010, Brower reported improvement in her narcolepsy symptoms and sleep pattern after taking Adderall. Other than continuing fatigue, Dr. Vijayakumar found that Brower's condition was stable in August 2010.

After reviewing this evidence in the decision and including the standard credibility boilerplate language, the ALJ concluded:

> The claimant's medical record shows recent improvements in the claimant's symptoms after restarting medication to treat her narcolepsy and depression. The claimant also has large gaps in her treatment history for narcolepsy and depression. This is inconsistent with the claimant's allegations of disabling levels of fatigue and depressed mood.
>
> The undersigned, after evaluating the claimant's allegations, considers the inconsistencies bearing on credibility. The evidence does not support the claimant's complaints of a disabling level of pain or illness and instead indicates that the claimant's allegations are not fully credible.

(AR 25) (internal citations omitted).

Brower contends that the ALJ erroneously weighed the gaps in the treatment records against her without determining the reason for those gaps. This is a problem. "[A]n ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms." *Thomas v. Colvin*, — F. App'x —, 2013 WL 4106366, at *5 (7th Cir. Aug. 13, 2013) (citing *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013)). Yet that is just what the ALJ did here. He cited the gaps in Brower's treatment records as a basis for his adverse credibility finding despite Brower's explanation that she lacked the financial resources to obtain regular treatment. Failure to obtain treatment because "the individual may be unable to afford treatment and may not have access to free or low-cost medical services," SSR 96-7p at *8, is expressly cited by the Social Security Agency as an example of a legitimate explanation excusing a claimant's failure to seek treatment. *Roddy*, 705 F.3d at 638; *see also Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). This issue is of particular concern because the ALJ placed significant emphasis on the gaps in Brower's treatment history as a basis for his adverse credibility finding. *See* (AR 24-25) ("The claimant then went approximately ten months without seeing Dr. Vijayakumar for her narcolepsy. . . . The claimant stopped seeing a psychiatrist and stopped taking her psychiatric medications due to cost in September 2008. . . . The claimant also has large gaps in her treatment history for narcolepsy and depression. This is inconsistent with the claimant's allegations of disabling levels of fatigue and depressed mood."). Consequently, the ALJ committed legal error in his analysis of the gaps in Brower's treatment records, requiring remand.

### B. Treating Source Opinion

Brower also challenges the ALJ's evaluation of Dr. Diaz's opinions concerning Brower's functional limitations. Dr. Diaz was Brower's treating psychiatrist. Brower contends that the ALJ

erroneously relied on the opinion of a non-examining physician to reject the assessment of Dr. Diaz. In response, the Commissioner argues that the ALJ reviewed Brower's longitudinal treatment record, which evidenced irregular and conservative treatment for depression, and appropriately compared that record with Dr. Diaz's treatment notes. Therefore, the Commissioner maintains that the ALJ reasonably rejected Dr. Diaz's opinion that Brower had marked mental limitations.

An ALJ is tasked with evaluating opinion evidence when making a determination of disability. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott*, 647 F.3d at 739. Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Here, the ALJ reviewed the medical opinions of Dr. Diaz and the state agency medical consultant, Dr. Blaine Pinaire. The ALJ reviewed Dr. Pinaire's mental RFC assessment completed on June 9, 2009. The ALJ noted Dr. Pinaire's finding that Brower was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek

without interruption. Further, the ALJ observed that Dr. Pinaire found that Brower was moderately limited in her ability to interact appropriately with the general public, respond appropriately to changes in the work setting, travel in unfamiliar places, and use public transportation. In conclusion, Dr. Pinaire found that Brower could perform unskilled tasks with moderate restrictions to compensate for her mental and social limitations. The ALJ found that Dr. Pinaire's conclusion was supported by Brower's medical history and that Dr. Pinaire's opinion was entitled to substantial weight.

The ALJ then reviewed Dr. Diaz's mental RFC assessment. Dr. Diaz found that Brower was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, work in proximity to others without being distracted, make simple work-related decisions, accept instructions and respond appropriately to supervisors, maintain socially appropriate behavior, maintain basic standards of neatness and cleanliness, set realistic goals, and make plans independently. Unlike Dr. Pinaire, Dr. Diaz found that Brower was markedly limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without supervision, complete a normal workday and workweek without interruption, travel in unfamiliar places, and use public transportation.

The ALJ concluded that Dr. Diaz's finding that Brower was moderately limited in her ability to follow and carry out complex instructions was consistent with that of Dr. Pinaire and entitled to substantial probative weight. However, the ALJ then stated that Dr. Diaz's remaining findings were inconsistent with Brower's medical history. Specifically, the ALJ noted that Brower's treatment records evidenced only conservative treatment of Brower's depression. Further, the ALJ contrasted

12

Dr. Diaz's opinion with Brower's report of her activities of daily living, which included preparing her children for school, performing household chores, gardening, and socializing with her family.

First, citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), Brower argues that the ALJ erred because he relied primarily on Dr. Pinaire's assessment to reject Dr. Diaz's opinion. To the extent that the ALJ provided additional reasons for discounting Dr. Diaz's opinion, Brower maintains that those reasons are not supported by the evidence. Brower is correct that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *See Gudgel*, 345 F.3d at 470 (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)).

However, that is not what occurred in the instant case. Although Brower argues that the ALJ relied primarily on Dr. Pinaire's opinion to reject the opinion of Dr. Diaz, this argument is not supported by a review of the ALJ's decision. The ALJ considered Dr. Diaz's assessment and explicitly compared it with Brower's medical history and activities of daily living. *See* (AR 26) ("[T]he remainder of Dr Diaz's opinion is inconsistent with the claimant's medical history . . . . Dr. Diaz's opinion is also inconsistent with the claimant's report of her daily activities . . . ."). When considering the weight to assign Dr. Diaz's opinion regarding the limitations brought about by Brower's mental impairments, it was appropriate for the ALJ to examine the totality of Brower's treatment records. *See, e.g., Punzio*, 630 F.3d at 710 (noting that an ALJ should analyze whether a mental residual functional capacity questionnaire was consistent with the provider's treatment notes as a whole because a "person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition"). Further, although the Seventh Circuit Court of Appeals has cautioned against "placing undue weight on a claimant's

13

household activities in assessing the claimant's ability to hold a job outside the home," *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006), the ALJ appropriately cited Brower's activities of daily living as one factor among several that he considered. Moreover, the ALJ considered Brower's activities of daily living for the purpose of determining the evidentiary value of Dr. Diaz's opinion as to Brower's functional limitations, and not for the purpose of directly assessing Brower's ability to hold a job outside the home. Therefore, because the ALJ did not rely solely on the opinion of a non-examining physician, Dr. Pinaire, to discount Dr. Diaz's assessment, the Court finds no legal error on this point.

Second, Brower asserts that the ALJ committed legal error because he rejected Dr. Diaz's RFC assessment without considering Dr. Diaz's treatment notes in violation of SSR 96-2p. Here, the ALJ partially discredited Dr. Diaz's mental RFC assessment because it was "inconsistent with the claimant's medical history, which shows only conservative treatment of the claimant's depression and reports of improvement in her ability to function during the day without assistance." (AR 26). Again, given the mixed evidentiary record before the ALJ, the Court cannot say that this conclusion is unreasonable. But the ALJ failed to articulate what specific treatment records support this conclusion. Perhaps the ALJ meant that Dr. Diaz's opinion was inconsistent with the treatment records from Dr. Gravelyn and Dr. Vijayakumar. Or perhaps the ALJ meant that Dr. Diaz's opinion was inconsistent with her own treatment records. But because the ALJ did not cite specific evidence in Brower's medical history, the Court is unable to trace the reasoning of the ALJ's decisionmaking. On remand, the ALJ should cite specific records to support his conclusion that Dr. Diaz's opinion is not supported by Brower's medical history. Further, the ALJ should discuss Dr. Diaz's own treatment notes and the support, or lack thereof, that they provide for her mental RFC assessment.

14

## C. RFC Assessment

Finally, Brower challenges the ALJ's RFC assessment. Relying on Dr. Vijayakumar's treatment records, Brower argues that she could not make it through an eight-hour workday without taking a nap for at least one hour. Brower compares this conclusion with the ALJ's RFC assessment and concludes that the ALJ failed to build a logical bridge between the evidence and the conclusion. In response, the Commissioner maintains that the ALJ's RFC assessment is supported by substantial evidence, including the opinions of state agency experts, Brower's treatment records, and Brower's treatment history.

In assessing an applicant's RFC, an ALJ will consider all of the relevant medical and nonmedical evidence in the record. 20 C.F.R. § 404.1545(a)(3); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). "The RFC assessment must include a narrative discussion describing *how* the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 362207, at *34478 (July 2, 1996) (emphasis added).

Here, the ALJ failed to "include a narrative discussion" describing *how* the evidence supports his RFC assessment. While the ALJ discussed the evidence and then stated that "the above residual functional capacity assessment is supported by the testimony received at the hearing as well as the medical evidence and source statements in the record," (AR 26), he did not build a "logical bridge" between the evidence that he described and his conclusions. Where an ALJ has erred by failing to build a "logical bridge," the Court looks at the evidence in the record to determine whether it "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Remand for "further specification" is not required where a court is convinced

that the ALJ will reach the same result. *Id.* (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Because the Court has already found that remand is appropriate in this case on other grounds, the ALJ should further develop his RFC assessment on remand. Again, having reviewed the mixed record before the ALJ, the Court cannot say that his conclusion was unreasonable. However, the ALJ was obligated to explain through a narrative discussion *how* the evidence supports his RFC assessment, and he should do so on remand.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing or Remanding the Decision of the Commissioner [DE 18] and **REMANDS** this case for further proceedings consistent with this Opinion and Order.

SO ORDERED this 16th day of September, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record